JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Charles Gatson ("Gatson"), appeals his conviction. Finding some merit, we reverse in part and affirm in part.
 {¶ 2} In January 2007, the Cuyahoga County Grand Jury indicted Gatson for (1) domestic violence, a violation of R.C. 2919.25, (2) felonious assault, a violation of R.C. 2903.11, (3) disrupting public service, a violation of R.C. 2909.04, (4) intimidation, a violation of R.C. 2921.04, (5) kidnapping, a violation of 2905.01, and (6) endangering children, a violation of R.C. 2919.22. Gatson pled not guilty to the charges and the matter proceeded to a bench trial where the following evidence was presented.
 {¶ 3} Tanya Gatson-Brown ("Tanya"), Gatson's wife, testified that on October 30, 2006, approximately four days after Gatson returned home from prison, he left the house to buy some shoes for their son. While he was gone, Tony Thompson, the father of one of Tanya's children, came over to visit. They were drinking beer and wine and eventually fell asleep on the couch. Tanya later awoke when Gatson slapped her across the face and spit in her face. Tanya jumped from the couch and followed Gatson to a back room, where the two began arguing over her alleged infidelity. Tanya denied having been unfaithful but Gatson did not believe her.
 {¶ 4} The argument continued to the front of the house where Gatson subsequently pushed Tanya into a door, resulting in a cut to her heel. At some point, Gatson threw a broom at her. The two returned to the living room where *Page 4 
Gatson pushed her again, causing her to fall backwards, hit the edge of the couch, and suffer a back injury.
 {¶ 5} Tanya further testified that she later called for an ambulance because of the pain in her back. While the Cleveland Heights firefighters/paramedics questioned her and evaluated her, Gatson stood in the other room and watched her. Tanya testified that she was scared because she was afraid that Gatson would "get mad." She also insinuated that Gatson stood in the other room to ensure that she did not tell the paramedics that he caused her injuries. Gatson declined to accompany the paramedics to the hospital.
 {¶ 6} A few days later, Tanya contacted the police and reported that she had been a victim of domestic violence.
 {¶ 7} On cross-examination, Tanya testified that Gatson had not threatened her after the alleged incident. She further acknowledged that she had not reported the alleged domestic violence earlier despite having opportunities to do so. Tanya also testified as to her multiple prior convictions, which included an assault against a police officer, an aggravated assault against Gatson, identity theft, and vandalism.
 {¶ 8} Following the close of the state's case, the trial court granted Gatson's motion for an acquittal on the kidnapping and endangering children counts. The trial court ultimately found Gatson guilty of domestic violence and intimidation and not guilty on the remaining charges of felonious assault and *Page 5 
disrupting public service. The trial court sentenced Gatson to two years in prison on each count, to be served concurrently.
 {¶ 9} Gatson appeals his conviction, raising the following three assignments of error:
 {¶ 10} I. The evidence is insufficient to support a conviction for intimidation of a witness under Ohio R.C. 2921.04.
 {¶ 11} II. The verdict of guilty on the charge of intimidation of witness was against the manifest weight of the evidence.
 {¶ 12} III. The verdict of guilty on the charge of domestic violence was against the manifest weight of the evidence.
 Sufficiency of the Evidence: Intimidation Count {¶ 13} In his first assignment of error, Gatson argues that the state failed to produce sufficient evidence to support a conviction of intimidation.
 {¶ 14} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact *Page 6 
could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 15} Gatson was convicted of intimidation, a violation of R.C. 2921.04(B), which provides as follows:
 {¶ 16} "(B) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of an attorney or witness."
 {¶ 17} Gatson contends that the state failed to prove the element of "force" or "by unlawful threat of harm" to sustain a felony intimidation conviction. The state concedes that it did not produce any evidence of force; rather, its case focused on intimidation "by unlawful threat of harm." The state contends that the collective evidence of Gatson staring at Tanya while she spoke with the paramedics, her own apprehension of how he would react if she told the truth, and the fact that he allegedly rendered the phone inoperable when he left the house sufficiently satisfied the element of unlawful threat of harm. The state further argues that Gatson's act of inducing Tanya to promise not to report any abuse to ensure that he did not return to prison also satisfied the element of unlawful threat of harm. We disagree. *Page 7 
 {¶ 18} In distinguishing between the misdemeanor and felony offenses of intimidation, the Ohio Supreme Court in State v. Cress,112 Ohio St.3d 72, 2006-Ohio-6501, discussed the significance of the phrase "unlawful threat of harm," which is contained in the felony offense (R.C. 2921.04(B)) and not the misdemeanor offense (R.C. 2921.04(A)), and explained the following:
 {¶ 19} "`Intimidation' by definition involves the creation of fear in a victim, and the very nature of a threat is the creation of fear of negative consequences for the purpose of influencing behavior. We simply do not discern a meaningful difference between intimidation of a witness and the making of a threat to a witness. According, both R.C. 2921.04(A) and (B) prohibit the threatening of a witness.
 {¶ 20} "An unlawful threat must accordingly connote more than just a threat, i.e., more than just a communication to a person that particular negative consequences will follow should the person not act as the communicator demands. The word `unlawful' in R.C. 2921.04(B) must add substantive meaning, or it is superfluous. * * *
 {¶ 21} "* * * [T]he statutory language in R.C. 2921.04(B), proscribing intimidation by an `unlawful threat of harm,' is satisfied only when the very making of the threat is itself unlawful because it violates established criminal or civil law." Id. at ¶ 40-42. *Page 8 
 {¶ 22} Applying the foregoing to the instant case, we find insufficient evidence to convict Gatson of felony intimidation. First, Tanya testified that Gatson never threatened her. Secondly, the state's collective evidence of "unlawful threat of harm" falls short of satisfying the element. Indeed, Tanya's apprehension or fear of Gatson alone, even if justifiable, is insufficient to support a felony conviction of intimidation. Cress, supra; see, also, State v.Gooden, 8th Dist. No. 81320, 2003-Ohio-2864, ¶ 27 (victim's fear of defendant is insufficient to support intimidation count). We further fail to see how Gatson's alleged act of removing the telephone cord constitutes an unlawful threat of harm. Even if the state's evidence arguably demonstrated a "threat," thereby supporting a misdemeanor conviction for intimidation, the state failed to meet the higher threshold of "an unlawful threat of harm."
 {¶ 23} Accordingly, Gatson's first assignment of error is sustained. Having found that the state failed to present sufficient evidence to support the intimidation conviction, his second assignment of error challenging the manifest weight of the evidence to support an intimidation conviction is moot.
 Manifest Weight of the Evidence: Domestic Violence Count {¶ 24} In his third assignment of error, Gatson argues that his conviction for domestic violence is against the manifest weight of the evidence. We disagree. *Page 9 
 {¶ 25} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. Thompkins, supra, at 387. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence. Id., citing State v. Robinson (1955), 162 Ohio St. 486, 487.
 {¶ 26} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as a "thirteenth juror," and, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Thompkins, supra, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 27} Gatson was convicted of one count of domestic violence, as defined in R.C. 2919.25, which provides:
 {¶ 28} "No person shall knowingly cause or attempt to cause physical harm to a family or household member." *Page 10 
 {¶ 29} Gatson argues that the state's evidence that he caused or attempted to cause physical harm was extremely weak. The crux of his argument is that Tanya's testimony failed to unequivocally demonstrate that he caused significant injury. This argument, however, lacks merit.
 {¶ 30} "Significant injury" is not an element to domestic violence. See R.C. 2919.25. Instead, the state only needed to prove that Gatson caused or attempted to cause "physical harm," which includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." See R.C. 2901.01(A)(3).
 {¶ 31} Here, Tanya's testimony established the necessary elements of the offense. Tanya testified that Gatson slapped her across the face, that he pushed her into a door, and that he pushed her down on the couch. The state further offered photographic evidence of the injury Tanya sustained to her foot. The circumstances surrounding the incidents, namely, Gatson's belief that Tanya was unfaithful, evidence that these acts were done knowingly and with the intent to cause physical harm. The mere fact that Tanya did not seek medical treatment at a hospital for the injuries she sustained does not negate Gatson's unlawful conduct. Accordingly, based on the record, we cannot say that the trier of fact "lost its way."
 {¶ 32} Gatson's final assignment of error is overruled. Judgment affirmed in part and reversed in part. *Page 11 
It is ordered that appellant and appellee split the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 KENNETH A. ROCCO, P.J., and JAMES J. SWEENEY, J., CONCUR. *Page 1